UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
LIBERTY INSURANCE UNDERWRITERS INC.,    :
                    Plaintiffs,         :
                                        :    11 Civ. 6973 (DLC)
          -v-                           :
                                        :    OPINION & ORDER
GREAT AMERICAN INSURANCE COMPANY,       :
                    Defendant.          :
                                        :
----------------------------------------X

Appearances:

For Plaintiff:
Marshall T. Potashner
Mark P. Monack
Jaffe & Asher LLP
600 Third Avenue, Ninth Floor
New York, NY 10016

For Defendant:
Sherri N. Pavloff
Farber Brocks & Zane, LLP
51 Charles Street, 2nd Floor
Mineola, NY 11501


DENISE COTE, District Judge:

     This insurance coverage dispute arises out of a judgment

obtained in a personal injury lawsuit in the New York Supreme

Court, Luis Garcia v. Plaza 400 Owners Corp., et al., Index No.

107425/06, 2010 WL 3772575 (N.Y. Sup. Ct. July 23, 2010) (the

"Underlying Action").  Plaintiff Liberty Insurance Underwriters

Inc. ("Liberty"), as subrogee of Arrow Restoration, Inc.

("Arrow"), seeks to enforce against Great American E & S

Insurance Company ("Great American") a judgment in the amount of

$424,000 obtained against Diamond Waterproofing Corp.
("Diamond").

     Diamond, a subcontractor that was performing work for Arrow
and whose employee was injured on April 4, 2006 during that
work, had an insurance policy with Great American.  Great
American denied coverage to Diamond, however, based on late
notice of the claim.  Liberty paid $1,060,000 to Diamond's
injured employee Luis Garcia ("Garcia") on behalf of Arrow, as
Arrow's liability insurance carrier, in full satisfaction of a
judgment in the Underlying Action.  Pursuant to N.Y. Ins. Law §
3420(a)(2), Liberty now challenges Great American's disclaimer
of coverage to Diamond.

     Great American and Liberty have moved for summary judgment.
For the following reasons, Great American's motion for summary
judgment is granted, and Liberty's motion for summary judgment
is denied.


BACKGROUND

I.   The Garcia Accident

     The following facts are undisputed unless otherwise
indicated.  In April 2006, Arrow was the general contractor for
a construction project at 401 East 55th Street, New York, NY (the
"Premises").  Arrow had subcontracted certain work on the
Project to Diamond.  On April 4, 2006, Garcia allegedly

2

sustained injuries during the course of his employment for Diamond at the Premises (the "Garcia Accident").

II.  The Great American Policy

There is no evidence that Diamond ever advised Great American of the Garcia Accident.  At the time of the Garcia Accident, Diamond maintained primary general liability insurance with Great American in the amount of $1,000,000 per occurrence, subject to a $2,000,000 aggregate, for the period November 27, 2005 through November 27, 2006 (the "Great American Policy"). The Great American Policy contained a provision requiring timely notice of "occurrences," "claims," or "suits" (the "Notice Provision").  The Notice Provision provides in relevant part:

> 2.  Duties In The Event Of Occurrence, Offense, Claim or Suit
>
> > a. You must see to it that we are notified <u>as soon as practicable</u> of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:
> >
> > > (1)   How, when and where the "occurrence" or offense took place;
> > > (2)   The names and addresses of any injured persons and witnesses; and
> > > (3)   The nature and location of any injury or damage arising out of the "occurrence" or offense.
> >
> > b. If a claim is made or "suit" is brought against any insured, you must:
> >
> > > (1)   Immediately record the specifics of the claims or "suit" and the date received; and
> > > (2)   Notify us <u>as soon as practicable</u>.

> You must see to it that we receive written
> notice of the claim or "suit" <u>as soon as
> practicable</u>.

(Emphasis supplied.)

III. The Underlying Action

On May 30, 2006, Garcia commenced the Underlying Action in
the Supreme Court, New York County, seeking money damages for
his injuries.  Garcia later filed an amended complaint to add
Arrow as a defendant in the Underlying Action.  At the time of
the Garcia Accident, Arrow maintained primary general liability
insurance with Liberty.  On October 18, 2007, Arrow filed a
third-party complaint in the Underlying Action against Diamond,
alleging that Garcia was an employee of Diamond at the time of
the Garcia Accident and that Arrow would be entitled to
contribution and contractual indemnity from Diamond for any
judgment Garcia might obtain against Arrow for his personal
injuries.

IV.  Great American's Notice of the Garcia Accident

In a letter dated January 2, 2008 (the "January 2, 2008
Letter") and addressed to Loyd Keith Friedlander Partners, Ltd.
("LKF"), Rivkin Radler LLP ("Rivkin"), Arrow's counsel in the
Underlying Action, wrote the following:

> Please be advised that we represent [Arrow] as a
> defendant in a lawsuit brought by Luis Garcia as a
> result of an April 4, 2006 accident that allegedly
> occurred while Mr. Garcia was working for [Diamond] at
> [the Premises].  It is alleged that he fell from an

4

unprotected sidewalk bridge.

> On October 24, 2007, we served [Diamond] with a third-party summons and complaint, a copy of which is enclosed.  Copies of the affidavits of service on those third-party defendants are enclosed.

> To date, we have not received an answer on behalf of those third-party defendants, nor have we been contacted by anyone seeking an extension of time to answer the third-party complaint.

> A copy of the certificate of insurance issued by your company is enclosed.

> Please immediately forward this letter and the attachments to the applicable insurer to prevent a default judgment.

Attached to the January 2, 2008 Letter was a copy of the third party summons and complaint filed by Arrow against Diamond and affidavits of service showing that the third party summons and complaint had been served on Diamond on October 24, 2007.

LKF was Diamond's insurance broker.  On January 4, 2008, LKF sent via facsimile a copy of the January 2, 2008 Letter and the third-party summons and complaint to AmWINS Brokerage ("AmWINS"), Great American's insurance broker.  The coversheet for the January 4, 2008 facsimile stated in pertinent part:

> Attached is a new general liability claim.  The summons & complaint is attached.  Please report to the carrier and advise our agency of the claim number and the adjuster's name and telephone number.

Also attached to the January 4, 2008 facsimile was a "General Liability Notice of Occurrence/Claim" form dated January 4, 2008, and bearing the electronic signature of LKF, as producer. The claim form describes the "Occurrence" as: "3rd party Summons

-- Insured's employee injured while working (WC Claim).  Injured employee brought suit against Arrow (contractor)."

On January 7, 2008, AmWINS sent an e-mail with a twenty-two-page attachment to its client, Great American.  Included in the twenty-two-page attachment were copies of: the January 2, 2008 Letter from Rivkin to LKF Partners; Arrow's third-party summons and complaint against Diamond; the affidavits of service of Arrow's third-party summons and complaint against Diamond; the January 4, 2008 facsimile coversheet from LKF Partners to AmWINS; and the January 4, 2008 Notice of Occurrence/Claim form. Thus, it is undisputed that on January 7, 2008, Great American received notice of the April 4, 2006 Garcia Accident and the service of the third-party complaint on Diamond on October 24, 2007.  It was, however, Diamond's broker that advised Great American's broker that Arrow had filed a lawsuit.

V.    Great American's Investigation

After receiving the January 7, 2008 e-mail from AmWINS, Great American questioned whether it had received timely notice of the accident and claim and timely tender of the suit papers as required by the Notice Provision of the Great American Policy.  On January 8, 2008, Great American therefore initiated various efforts to contact Diamond to determine when Diamond first became aware of the Garcia Accident.  After these efforts proved unsuccessful, Great American tried to find this

6

information through other means, including through contacting
Diamond's worker's compensation insurer, AIU, and through
retaining an independent investigator, Pacific Claims Service,
Inc. ("Pacific").

On March 2, 2008, Great American received a report from
Pacific that it had been unable to locate anyone associated with
Diamond.  Via a facsimile dated March 4, 2008, however, Great
American procured a copy of a C2 Notice of Claim form filed with
AIU (the "C2").  The C2 indicates that Diamond knew of the
injury allegedly sustained by Garcia on April 4, 2006 and that
Diamond reported the injury and accident to AIU on April 21,
2006.

VI.  Great American's Disclaimer to Diamond

Approximately two months after receiving notice of the
Garcia Accident, Great American disclaimed coverage.  Great
American issued its denial of coverage to Diamond by letter
dated March 12, 2008 (the "March 12, 2008 Disclaimer").  The
March 12, 2008 Disclaimer referenced the Underlying Action and
then stated in pertinent part:

> This letter is to acknowledge receipt of the above
> referenced lawsuit, which notice was received in our
> office on January 7, 2008.  This was our first notice
> of this occurrence, claim and suit.  Great American .
> . . regretfully informs you that the Great American
> policy issued to Diamond . . . does not afford
> coverage of the above referenced suit due to Late
> Notice. . . .  [N]otice of the above-referenced
> occurrence, claim and suit was not provided to Great

7

American in a timely manner in compliance with the
notice condition contained in the Great American
policy.

Great American sent the March 12, 2008 Disclaimer to Diamond,

with a copy to Arrow's counsel in the Underlying Action.

VII. The Prior Declaratory Suit

On May 26, 2009, Liberty and Arrow filed a complaint

against Great American, Liberty Insurance Underwriters Inc. and

Arrow Restoration, Inc. v. Great American Insurance Co., 09 Civ.

4912 (DLC), 2010 WL 3629470 (S.D.N.Y. Sept. 17, 2010) (the

"Prior Declaratory Suit"), seeking a judgment (1) declaring that

Great American owed Arrow a duty to defend and indemnify for the

claims alleged in the Underlying Action; (2) declaring that

Great American's coverage of Arrow was primary to both the

insurance coverage under Liberty's policy and Arrow's self-

insured retention; (3) directing Great American to assume

immediately a duty to defend Arrow in the Underlying Action; and

(4) awarding Liberty and Arrow the costs and disbursements of

the Prior Declaratory Suit.[1]  By Opinion and Order of September

17, 2010, Great American's motion for summary judgment was

granted on grounds that Liberty and Arrow "failed to offer any

evidence or provide any valid legal argument to undermine the

---

[1] The Prior Declaratory Suit initially included an additional
cause of action alleging that Great American failed to timely
disclaim coverage to Diamond, but this cause of action was
withdrawn without prejudice on June 23, 2010.

conclusion that Great American's disclaimer to Arrow was both proper and timely under N.Y. Ins. Law § 3420." Id.  The September 17, 2010 Opinion and Order concluded, inter alia, that the January 2, 2008 Letter "did not constitute proper notice of Garcia's claim against Arrow or a request for additional insured coverage [for Arrow] under the Great American Policy." Id. at *8.  The Prior Declaratory Suit was dismissed on September 23, 2010.

VIII. The Present Litigation

On January 11, 2011, Arrow obtained a judgment against Diamond in the Underlying Action (the "Judgment") for 40% of the damages actually paid by Arrow to Garcia.  On February 16, notices of entry of judgment were served upon Diamond and Great American.  On May 31, 2011, Liberty paid $1,060,000 to Garcia on behalf of Arrow in full satisfaction of the Judgment.  On September 1, 2011, Liberty commenced the present action as Arrow's subrogee pursuant to N.Y. Ins. Law § 3420(a)(2) by filing a Summons and Complaint in the Supreme Court of the State of New York, New York County.  The Complaint seeks to enforce against Great American the judgment that Arrow obtained against Diamond for $424,000, plus interest and costs, on grounds that Great American did not properly and timely disclaim coverage of Diamond.  Great American removed the action to this Court on

9

October 5, 2011 based on diversity of citizenship, and filed its Answer on October 6.

Great American filed a motion for summary judgment on October 18 (the "Great American Motion") and Liberty filed a cross-motion for summary judgment on December 13 (the "Liberty Motion").  The Great American Motion was fully submitted on January 13, 2012, and the Liberty Motion was fully submitted on January 31.


DISCUSSION

This lawsuit represents Liberty's second attempt to obtain a remedy from Great American related to the Garcia Action or subsequent Judgment.  Liberty's first attempt in the Prior Declaratory Suit failed because, among other reasons, Liberty sent notice of its third party summons and complaint not to Great American or its agent, but to Diamond's agent.  This lawsuit fails for largely the same reason.

I.   Standard of Review

Summary judgment is "'appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.'"  Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC, 628 F.3d 46, 51 (2d Cir. 2010) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)).  "The role of the

court in deciding a motion for summary judgment 'is not to
resolve disputed issues of fact but to assess whether there are
any factual issues to be tried, while resolving ambiguities and
drawing reasonable inferences against the moving party.'"
Wilson v. Northwestern Mut. Ins. Co., 625 F.3d 54, 59-60 (2d
Cir. 2010) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11
(2d Cir. 1986)).

　　　Once the moving party has asserted facts showing that the
non-movant's claims cannot be sustained, the opposing party must
"set out specific facts showing a genuine issue for trial," and
cannot "rely merely on allegations or denials" contained in the
pleadings.  Fed. R. Civ. P. 56(e); see also Wright v. Goord, 554
F.3d 255, 266 (2d Cir. 2009).  "A party may not rely on mere
speculation or conjecture as to the true nature of the facts to
overcome a motion for summary judgment," as "[m]ere conclusory
allegations or denials cannot by themselves create a genuine
issue of material fact where none would otherwise exist."  Hicks
v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).

II.  Diamond's Rights to Coverage

　　　Although Liberty brings this action, the parties'
submissions address Diamond's rights to coverage under the Great
American Policy.  Pursuant to New York Insurance Law § 3420(b),
Liberty, as subrogee of judgment creditor Arrow, may assert a
direct cause of action against Great American to satisfy the

11

Judgment in the Underlying Action in favor of Arrow against
Diamond.  <u>See</u> N.Y. Ins. Law § 3420(a) (McKinney).[2]  In doing so,
Liberty "stands in the shoes" of the insured, Diamond, and can
have no greater rights than Diamond.  <u>D'Arata v. New York Cent.</u>
<u>Mut. Fire Ins. Co.</u>, 76 N.Y.2d 659, 665 (1990) (citation
omitted).  This Opinion therefore addresses the terms of the
Great American Policy issued to Diamond, and the compliance of
Great American and Diamond with those terms.

     The Notice Provision of the Great American Policy, quoted
above, requires that Great American receive written notice of a
claim or suit "as soon as practicable."  Compliance with a
policy's notice provisions "is a condition precedent to the
insurer's liability under the policy."  <u>Webster ex rel. Webster</u>
<u>v. Mount Vernon Fire Ins. Co.</u>, 368 F.3d 209, 214 (2d Cir. 2004).
An insured can avoid disclaimer due to untimely notice if it can
establish that it had a good faith belief in non-liability,
<u>See, e.g.</u>, <u>White v. City of New York</u>, 81 N.Y.2d 955, 958 (1993).
If the insured has knowledge of the claimant's injury, however,
the insured is precluded from arguing that it had a good faith
belief in non-liability.  <u>See, e.g.</u>, <u>Paramount Ins. Co. v.</u>
<u>Rosedale Gardens</u>, 743 N.Y.S.2d 59, 62-63 (App. Div. 2002).

---

[2] The parties do not argue that the law of a state other than New
York should apply here, and the Second Circuit has held that
"where the parties agree that New York law controls, this is
sufficient to establish choice of law."  <u>Federal Ins. Co. v.</u>
<u>American Home Assurance Co.</u>, 639 F.3d 557, 566 (2d Cir. 2011).

An insurer has an obligation to provide written notice of a disclaimer of coverage as to a particular insured "as soon as is reasonably possible."  N.Y. Ins. L. § 3420 (McKinney).  This obligation arises as soon as the insured provides notice of the occurrence or claim.  Webster, 368 F.3d at 214.  An insurer's failure to promptly and timely disclaim coverage based upon a claimant's late notice results in waiver of this defense to coverage.  General Acc. Ins. Group v. Cirucci, 46 N.Y.2d 862, 864 (1979).

An insurer does not waive the "late notice" defense, however, if its delay in disclaiming is "occasioned by a reasonably prompt, thorough, and diligent investigation of the claim."  Webster, 368 F.3d at 216 (citation omitted).  This is because "an investigation is often necessary to determine whether there is any basis for disclaiming coverage."  Id. at 216-17.  As such, "the reasonableness of the time period that an insurer takes to issue its disclaimer is judged with reference to the date on which the insurer has sufficient facts to allow a good faith disclaimer of coverage."  Id. at 215.  To determine whether an insurer's decision to conduct an investigation is proper, the operative questions are:

> (1) what did the insurer know on [the date it first received information that would disqualify the claim] about the accident and resulting claim, and (2) did that information make it readily apparent at that time

13

that it had the right to disclaim coverage under the
policy?

Ace Packing Co., Inc. v. Campbell Solberg Assoc., Inc., 41
A.D.3d 12, 14-15 (N.Y. 2007).  New York law thus declines to
embrace a policy of "disclaim now and investigate later."  Id.
at 15.  When the grounds for disclaiming "are readily apparent
based upon the documents delivered to the insurer," however, an
insurer is obligated to disclaim coverage "without delay."  Id.
at 13.

Great American timely disclaimed coverage as to Diamond
because (1) Great American did not have sufficient facts to
allow a good faith disclaimer of coverage at the time it
received notice of the Garcia Claim; (2) Great American engaged
in a reasonably prompt, thorough, and diligent investigation of
the claim; (3) the results of Great American's investigation
revealed that the notice received by Great American on behalf of
Diamond was untimely as a matter of law; and (4) Great American
promptly disclaimed coverage upon completion of the
investigation.

Among these conclusions, the parties disagree only on
whether Great American had sufficient facts to allow a good
faith disclaimer of coverage at the time it first received
notice of the Garcia Claim.  Liberty argues that the grounds for
disclaiming were readily apparent to Great American based on the

documents it received on January 7, 2008 and as such its subsequent disclaimer was untimely; Great American argues that it did not have sufficient facts to disclaim coverage at the time it received notice.

The date when an insured first learns of either the accident or the lawsuit is "essential to the insurer in determining whether to disclaim," and knowledge of what the insured did with that information when it was received is even "[m]ore important[]" in making this determination.  Ace Packing, 41 A.D.3d at 15.  An insurer needs such information "in order to make a good faith decision regarding disclaimer."  Id. According to the uncontested facts, upon receiving notice of the Garcia Claim on January 7, 2008, via an e-mail and 22-page attachment from AmWINS, Great American had no knowledge of the date when Diamond first learned of either the Garcia Accident or the Underlying Lawsuit, or what Diamond did with this information when it received it.  Great American was thus entitled to conduct its investigation as a matter of law.

Liberty claims that the documents received by Great American on January 7, 2008 made it readily apparent that notice by Diamond was untimely because the documents showed that Garcia was Diamond's employee at the time of the accident.  According to Liberty, Garcia must have been aware of the accident at the time it occurred because he was involved in it, and an

15

employee's knowledge acquired in the scope of his duties is imputed to the employer.

This argument is incorrect.  Liberty cites no case stating that knowledge acquired by <u>any</u> of a corporation's employees in the scope of their duties is imputed to the corporation for purposes of determining a corporation's awareness of an accident.  Rather, "[t]he general rule is that knowledge acquired by an agent <u>acting within the scope of his agency</u> is imputed to his principal and the latter is bound by such knowledge although the information is never actually communicated to it."  <u>New York Univ. v. First Fin. Ins. Co.</u>, 322 F.3d 750, 753 n.2 (2d Cir. 2003) (emphasis supplied). Accordingly, an insured is deemed to have notice of an accident or occurrence when one of its agents for purposes of such notice is aware of the incident.  <u>See</u> <u>White by White v. City of New York</u>, 81 N.Y.2d 955, 958 (1993).  Liberty does not allege that Garcia was an agent for purposes of receiving notice of accidents or occurrences, or that the documents received by Great American on January 7, 2008 made it readily apparent that any such agent had been made aware of the Garcia Accident.

<u>Hunter Roberts Const. Group, LLC v. Arch Ins. Co.</u>, 904 N.Y.S.2d 52 (App. Div. 2010), which Liberty cites as persuasive authority in its favor, is in fact wholly consistent with this conclusion.  Unlike Great American, the insurer in <u>Hunter</u>

16

Roberts did not explain that its investigation was focused on determining when its insured learned of the accident.  And the Hunter Roberts court did not hold that a corporation's employees are all agents authorized to receive notice of accidents or occurrences.  Id. at 57-58.

Liberty further argues that the affidavits of service of Arrow's third-party complaint against Diamond in the Underlying Action, which Great American received on January 7, 2008, made it readily apparent that Diamond had been aware of the Garcia Accident for more than two months at a minimum.  These affidavits of service indicated that the complaint had been served on Diamond via substituted service through the New York Secretary of State on October 24, 2007.

This argument is also incorrect.  Liberty fails to establish that an insurer's receipt of affidavits of service of a third-party summons and complaint against its insured makes it readily apparent to the insurer that the insured is aware of the accident giving rise to the summons and complaint.  Liberty notes that under New York Business Corporation Law § 306, service of process on a corporation is complete when the Secretary of State is properly served as an agent of the corporation.  N.Y. Bus. Corp. Law § 306 (McKinney).  Accordingly, when service of a personal injury summons with notice has been properly effected on the Secretary of State, the

17

failure of an insured to comply with the notice provisions of its policy will not be excused simply because the insured failed to keep its address up to date with the Secretary of State (and therefore did not actually receive a copy of the summons with notice).  The insurer is justified in disclaiming coverage in such circumstances.  Briggs Ave. LLC v. Ins. Corp. of Hannover, 11 N.Y.3d 377, 381 (2008).

The fact that an insurer may properly disclaim in the above circumstances, however, does not imply that Great American was not entitled to conduct its investigation.  This is because the mere fact that an insured has been served with a summons and complaint does not establish "when [the insured] first learned of either the accident or the lawsuit," and "what [the insured] did with that information when it was received."  Ace Packing, 41 A.D.3d at 15.  When such essential facts are missing from the documents received by an insurer, the insurer is entitled to conduct an investigation promptly and in good faith.  Id.  In Ace Packing, for example, the insurer's decision to investigate was considered to be "imminently [sic] reasonable" even though the insured had been served with a summons and complaint in an underlying action more than one year prior.  See Id. at 14-15.  Moreover, the documents received by Great American on January 7, 2008, did not include a copy of Garcia's amended complaint

against Arrow; they included only the third-party complaint
against Diamond.

III. Arrow's Notice Rights

Liberty argues that Great American failed to properly
disclaim coverage because it was obligated to disclaim based on
late notice by Arrow, not Diamond, and failed to do so.  N.Y.
Ins. Law 3420(a)(3) provides injured parties and third-party
claimants, such as Arrow, with independent notice rights.  It
provides that

> notice given by or on behalf of the insured, or
> written notice by or on behalf of the injured person
> or any other claimant, to any licensed agent of the
> insurer in this state, with particulars sufficient to
> identify the insured, shall be deemed notice to the
> insurer.

N.Y. Ins. Law § 3420(a)(3) (McKinney) (emphasis supplied).  To
timely disclaim, an insurer must "give written notice as soon as
is reasonably possible . . . to the insured and the injured
person or any other claimant."  N.Y. Ins. Law § 3420(d)
(McKinney) (emphasis supplied).  "[T]he notice of disclaimer
must promptly apprise the claimant with a high degree of
specificity of the ground or grounds on which the disclaimer is
predicated."  General Acc. Ins. v. Cirucci, 46 N.Y.2d 862, 864
(1979).  Accordingly, when a third-party claimant provides
notice to an insurer, a disclaimer based on failure by the

19

<u>insured</u> to provide timely notice will not be effective against
the third-party claimant.  <u>Id.</u> at 863-64.

It is undisputed that Great American disclaimed based on
late notice by Diamond, the insured, not on late notice by
Arrow, a third-party claimant.  Liberty claims that the January
2, 2008 Letter constituted notice to Great American on behalf of
Arrow, and that Great American's disclaimer was therefore
ineffective.

Liberty's argument is misplaced.  Notice provided by a
third-party claimant to an insured's insurance broker is not
notice to the insurer, even if the relevant papers are forwarded
by the broker to the insurer.  <u>See</u> <u>Guayara v. Hudson Ins. Co.</u>,
852 N.Y.S.2d 359, 361 (App. Div. 2008); <u>In re First Cent. Ins.</u>
<u>Co.</u>, 771 N.Y.S.2d 141, 142 (App. Div. 2004).  In such cases, the
insurer is not required to disclaim based on late notice by the
third-party claimant.  Arrow's attorney mailed the January 2,
2008 Letter to LKF.  LKF is Diamond's insurance broker; it is
not a "licensed agent" of Great American.  <u>See</u> N.Y. Ins. Law §
3420(a)(3).  Diamond's broker faxed the documents to Great
American's insurance broker, AmWINS.  AmWINS then sent the
January 2, 2008 Letter to Great American as an e-mail
attachment.  It was thus Diamond's agent, and not Arrow, that
provided notice to Great American's agent.  This chain of

messages does not constitute notice by or on behalf of Arrow to
Great American or its licensed agent.

The Second Circuit has provided a common-sense explanation
as to why insurers are not required to disclaim coverage as to
insureds who do not notify the insurer of their intention to
pursue a claim.  If such a rule were in place,

> the insurer would be forced to undertake needless
> investigations to protect against the possibility that
> it could be required to provide coverage, despite the
> insured's noncompliance with the terms of the policy,
> in later litigation.  Such a rule would simply result
> in raised premiums to cover the costs of defending
> against potential claims by those insureds who neglect
> to comply with the notice provisions of their
> policies.

Webster ex rel. Webster v. Mount Vernon Fire Ins. Co., 368 F.3d
209, 216 (2d Cir. 2004).  The same rationale applies to an
insurer's responsibilities as to third-party claimants, like
Arrow, who fail to provide notice to the insurer of their
intention to pursue a claim.

Liberty argues that National Grange Mut. Ins. Co. v.
Croyle, Inc., 930 N.Y.S.2d 740 (App. Div. 2011), supports a
finding that Arrow exercised its independent notice rights
through sending the January 2, 2008 Letter.  Croyle does no such
thing.  In Croyle, an attorney for the injured party sent a
letter to the insured requesting that the insured deliver a copy
of the pleadings in the underlying action to its insurer.  The
attorney for the injured party thereafter communicated with a

representative of the insurer <u>directly</u>, both orally and in writing, concerning the underlying action.  <u>See</u> <u>id.</u> at 741.  The Fourth Department concluded that this constituted independent notice to the insurer by the injured party.  By contrast, in this case there are no facts indicating that Arrow ever communicated directly with Great American or its authorized agent concerning the underlying action either orally or in writing.  <u>Croyle</u> is therefore inapposite.  Therefore, Great American had no obligation to disclaim coverage vis-à-vis Arrow.[3]

CONCLUSION

Liberty's October 18, 2011 motion for summary judgment is denied.  Great American's December 13, 2011 cross-motion for

---

[3] Furthermore, because Liberty must stand in the shoes of the insured, Diamond, it must demonstrate that Great American's failure to disclaim as to Arrow conveyed coverage rights not to Arrow but to Diamond.  Even assuming, <u>arguendo</u>, that Great American received notice from Arrow and not Diamond, Liberty points to no case in which an insurer's failure to disclaim as to a third-party claimant exercising its independent notice rights conveyed coverage rights to an insured that never filed a notice of claim.

summary judgment is granted.  The Clerk of Court shall enter

judgment for the defendant and close the case.


        SO ORDERED

Dated:    New York, New York
          June 20, 2012

                                   _____
                                        DENISE COTE
                                   United States District Judge